In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00072-CV**
_____

**EX PARTE CALVIN POEST**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 24-01-01421-CV**

**MEMORANDUM OPINION**

Calvin Poest filed a notice of appeal of an order denying an application for a writ of habeas corpus, and in the brief he filed to support his appeal he complains the trial court erred in denying the Application for Writ of Habeas Corpus (the "application"), which he filed with the trial court during January 2024. In his application, Poest alleged that he "is civilly committed pursuant to Texas Health & Safety Code Chapter 841." The application Poest filed argues that the 2015 Amendments to Chapter 841 should not have been applied to him, and he argues that the statute, as applied to him, is unconstitutional. On appeal, the Clerk of the Court questioned whether this Court had jurisdiction over Poest's appeal. Poest responded

1

and argued that because the trial court had ruled on the merits of his application, this Court had appellate jurisdiction over his appeal. In the alternative, Poest asked this Court to consider his request as a petition seeking mandamus relief should the Court find that appellate jurisdiction was lacking over his appeal.

For the reasons explained below, we conclude the trial court did not rule on the merits of Poest's application for a writ of habeas corpus. We also conclude the trial court did not abuse its discretion in denying the application and that Poest is not entitled to relief under his alternative argument asking the Court to treat his appeal as a petition for mandamus. We dismiss the appeal and deny the petition for a writ of mandamus.

Background

In his application for a writ of habeas corpus, Poest alleged he is in the custody of Marsha McLane, Executive Director of the Texas Civil Commitment Office (TCCO) and that he is "unlawfully confined and restrained in his liberty at the Texas Civil Commitment Center[.]" Poest states that he was civilly committed in 2009 in the 435th District Court of Montgomery County, Texas, in Trial Cause Number 09-05-04476-CV. *See* Tex. Health & Safety Code Ann. §§ 841.001-.209 (the SVP Act). Poest claims the 2015 amendments to the SVP Act, which the 84th Legislature passed as Senate Bill Number 746 (S.B. 746), are unconstitutional as applied to him because the enactment language of S.B. 746, subsection 40(a), made

the law prospective only, and he was civilly committed as an SVP before the effective date of S.B. 746, which is June 17, 2015. Poest alleged that his involuntary residence in the Texas Civil Commitment Center is illegal because section 12 of S.B. 746, which deleted "outpatient" from the first and second sentences of section 841.081 of the Health and Safety Code and section 16 of S.B. 746, and which created a tiered treatment program and required incarceration in a "total confinement facility" in newly enacted section 841.0831 of the Health and Safety Code, should not be applied to him because when the amendments went into effect, he had already been adjudicated a sexually violent predator and was therefore already subject to a civil commitment order that had issued under the SVP Act. Poest asked the trial court to issue the writ of habeas corpus and order McLane to release Poest from confinement in the Texas Civil Commitment Center and provide treatment and supervision in a manner other than confinement. In his application seeking a writ of habeas corpus, Poest asked the trial court to conduct a video conference hearing on the issues he claimed his application raised.

In a response opposing Poest's application, the State explained that Poest's original 2009 order of civil commitment required that he reside in supervised housing at a Texas residential facility under contract with the TCCO's predecessor agency. Additionally, the State argued that the 2015 amendments to the SVP Act required the TCCO to operate a tiered treatment program that began with total

3

confinement and had tiers of treatment that could then transition to possible release from civil commitment. The State argued the S.B. 746 enactment language that applied to Poest was subsection 40(b), which required the trial court to modify Poest's civil commitment order and place Poest in the tiered treatment program in late 2015.

On February 1, 2024, the trial court denied Poest's application and his motion requesting a hearing. In its order, the trial court stated:

> The court has this day reviewed Poest's application for a writ of habeas corpus and his motion for a hearing. The court has also reviewed the State's responses and all other documents related to Poest's application.
>
> The court finds there are no controverted, previously unresolved facts material to the legality of Poest's civil commitment or his 2015 placement into the tiered-treatment program. Therefore, Poest's request for a hearing is DENIED.
>
> Further, the court finds legal authority overruling Poest's arguments in his application. Therefore, Poest's application for writ of habeas corpus is also DENIED.

On February 14, 2024, Poest filed a motion to strike the State's response to his application. Poest complained that the Special Prosecution Unit (SPU) was not statutorily authorized to represent the State in a habeas corpus proceeding, argued that he had inadvertently served the Montgomery County District Attorney, and that on January 5, 2024, he served Respondent McLane by serving the General Counsel of the TCCO by regular mail. Poest submitted a proposed order, which is contained in the clerk's record but is unsigned.

4

On February 21, 2024, Poest mailed a notice of appeal of the trial court's Order denying his application for a writ of habeas corpus. Upon receiving the clerk's record, the Clerk of the Court of Appeals issued a notice questioning whether the appellate court had jurisdiction to consider the appeal. In response, Poest argued the order could be appealed because the trial court had ruled on the merits of Poest's habeas corpus petition. He argued that, although the trial court declined to issue the writ, it had considered the facts argued in the application and considered the arguments his application had raised. Finally, Poest asked that this Court consider his request in the alternative as seeking a writ of mandamus. The Clerk of the Court notified Poest that if he wanted the appellate court to consider a request for mandamus relief, he would be required to file a mandamus petition at the same time or combine his petition with the Appellant's Brief.

After Poest appealed, Poest filed a motion with the Clerk of this Court asking that the Court strike the brief filed by the SPU on behalf of the State. He argues the SPU "does not have standing to be a party in this case, nor to represent a party in this case." He argues the Respondent is Marsha McLane in her capacity as Director of the TCCO, and Poest contends the SPU should not have the right to file a brief.

Special Prosecution Unit

Poest's objection to the SPU's appearance in the trial court and in the appellate court lacks merit because Poest ignores the fact that the SPU represents The State of Texas. In his application for a writ of habeas corpus, as the person held in custody Poest is the Applicant, as the person holding Poest in custody McLane is the Respondent, and as the party whose petition for civil commitment resulted in the trial court's judgment and order of civil commitment the State of Texas is the Real Party in Interest.

In 2009, Poest's civil commitment proceeding was called to trial and Poest entered into an Agreed Final Judgment. The Agreed Final Judgment reflects that he declared: "CALVIN LEE POEST is a sexually violent predator as defined in Health & Safety Code § 841.003 and so stipulates. CALVIN LEE POEST agrees to civil commitment in accordance with Health & Safety Code § 841.081, this Agreed Final Judgment and the Order of Commitment signed this date." Thus, the record shows that the 2009 Order of Commitment is the source of Poest's current confinement. And that Order specifically provides that Poest is required to reside in supervised housing at a Texas residential facility under contract with TCCO's predecessor agency, or at another location or facility approved by that agency, in accordance with the applicable law governing Poest, a sexually violent predator. *See* Act of May 23,

6

2011, 82nd Leg., R.S., ch. 1201, § 8, 2011 Tex. Sess. Law Serv. 3197, 3200-01 (amended 2015, 2017).

As to the SPU representing the State, the SPU provides legal assistance for the State in civil commitment cases filed under the SVP Act. *See* Tex. Health & Safety Code Ann. § 841.042 ("On request of the attorney representing the state, the special prosecution unit shall provide legal, financial, and technical assistance to the attorney for a proceeding conducted under this chapter."). An application for a writ of habeas corpus is a procedural vehicle for challenging the legality of a person's confinement. *See generally* Tex. Const. Art. I, § 12 ("The writ of Habeas Corpus is a writ of right, and shall never be suspended. The Legislature shall enact laws to render the remedy speedy and effectual."). In Poest's case, the confinement he alleges is illegal is based upon the 2009 order of civil commitment, as modified through later proceedings, including the October 2015 Amended Order of Civil Commitment that required Poest to be placed into the "Tiered Treatment Program, as coordinated by the Texas Civil Commitment Office, pursuant to Tex. Health & Safety Code § 841.0831." The 2015 Order expressly states that "Poest's Order of Civil Commitment is amended to conform with the legislative changes contained in Senate Bill 746."

In his Application for Writ of Habeas Corpus, Poest acknowledges he is an SVP and subject to the order of civil commitment. We conclude when a person

subject to an order of civil commitment under the SVP Act challenges that confinement in an application for a writ of habeas corpus, the SPU is authorized to represent the State in the courts where the order's validity is challenged.

Appeal

Next, we consider whether we may review the trial court's order as an exercise of our appellate jurisdiction. *See* Tex. Gov't Code Ann. § 22.220(a); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.012 (allowing an appeal from a final judgment of the district court). In his response to the Clerk's notice regarding jurisdiction, Poest argues the order signed by the trial court in his case is similar to the order signed by the trial court in *Ex parte Rubio*, in which we held the trial court ruled on the merits of the SVP's application seeking habeas relief. *See* No. 09-22-00219-CV, 2023 WL 4781646, at *2 (Tex. App.—Beaumont July 27, 2023, mand. denied, habeas corpus denied) (mem. op.). In *Ex parte Rubio,* Rubio (also an SVP) filed an Application for Writ of Habeas Corpus wherein he alleged 23 grounds in his application making both legal and factual complaints against his continued confinement. However, Rubio did not support his application with a supporting affidavit or with documents to support his application for habeas relief. When the State answered Rubio's application, it supported its answer with this Court's 2013 memorandum opinion dismissing Rubio's appeal from the civil commitment order, our mandate, the denial of Rubio's petition for review by the Supreme Court of

8

Texas, and this Court's 2017 memorandum opinion denying Rubio's petition seeking a writ of mandamus to compel the trial court to rule on his motion seeking to declare the judgment committing him as a sexually violent predator void because he claimed that one of his prior convictions arose from a no contest plea. The SPU argued the grounds raised by Rubio were not cognizable in a habeas proceeding. The trial court in *Ex parte Rubio* entered an Order denying the application and, in the order, stated that after reviewing the application and all documents from the parties the application "should be on all grounds Denied." On appeal to this Court and after examining the record as a whole we concluded that we had appellate jurisdiction because the trial court in denying Rubio's application had made a "merits ruling."

Here, unlike the application filed by Rubio, Poest's application for a writ of habeas makes a legal argument about why he contends the 2015 Amendments and the Tiered Treatment Program do not apply to him. Poest does not controvert any of the historical facts. In the trial court's Order denying Poest's application, the trial court expressly states that no hearing is required because there are no controverted and no previously unresolved material facts. Then in a separate paragraph the trial court states there is "legal authority overruling Poest's arguments in his application. Therefore, Poest's Application for Writ of Habeas Corpus is also DENIED." These additional recitals along with the nature of the application filed by Poest distinguish this case from the facts in *Rubio*.

9

Poest applied to the trial court for a writ that, if granted, would afford him relief from the restrictions on his liberty that were imposed on him by virtue of the order of civil commitment in Trial Cause Number 09-05-04476-CV. "[A]n appellate court has no jurisdiction to hear the appeal when the trial court did not deny the application for writ of habeas corpus on its merits." *Ex parte Miller*, No. 09-08-00194-CV, 2008 WL 5780816, at *1 (Tex. App.—Beaumont Apr. 2, 2009, no pet.) (mem. op.). After reviewing the record as a whole in this case, we conclude the order denying Poest's application for a writ of habeas corpus was not appealable as a final judgment and that the trial court determined the application lacked merit from the face of Poest's application.

Mandamus

An appellant may invoke the court's mandamus jurisdiction by requesting that the appeal brief be considered as a mandamus petition in the event the appellate court determines it lacks appellate jurisdiction over the case. *See In re Commitment of Renshaw*, 672 S.W.3d 426, 427-28 (Tex. 2023) (orig. proceeding); *CMH Homes v. Perez*, 340 S.W.3d 444, 452 (Tex. 2011). Poest requested that the Court treat his appellate brief as a request for mandamus relief.

We may issue a writ of mandamus to remedy a clear abuse of discretion by the trial court when the relator lacks an adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v.*

*Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). "A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839 (internal quotations omitted). A trial court also abuses its discretion if it fails to correctly analyze or apply the law, because "'[a] trial court has no "discretion" in determining what the law is or [in] applying the law to the facts[.]'" *See Prudential*, 148 S.W.3d at 135 (quoting *Walker*, 827 S.W.2d at 840).

Statutory construction is a question of law we review de novo. *In re D.S.*, 602 S.W.3d 504, 514 (Tex. 2020). "Our primary objective in construing statutes is to give effect to the Legislature's intent." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Id*. "If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the statute." *In re D.T.*, 625 S.W.3d 62, 71 (Tex. 2021). We presume that each word contained in a statute has a purpose and that words not included were omitted purposefully. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017).

The provisions of section 841.082(a) that were in effect before the 2015 amendment allowed the committing court to enter an order "(1) requiring the person

11

to reside in a Texas residential facility under contract with the council or at another location or facility approved by the council;" and "(4) requiring the person's participation in and compliance with a specific course of treatment[.]" *See* 2011 Tex. Sess. Law Serv. at 3200. And, this Court has previously rejected SVP challenges to a committing court's order placing a pre-amendment SVP into a tiered treatment program as mandated by the Legislature in the 2015 amendment. *See In re Wilson*, No. 09-16-00243-CV, 2016 Tex. App. LEXIS 10400, at *3 (Tex. App.— Beaumont September 22, 2016, orig. proceeding) (mem. op.); *In re Martinez*, No. 09-16-00263-CV, 2016 Tex. App. LEXIS 10012, at *2 (Tex. App.—Beaumont Sept. 8, 2016, orig. proceeding) (mem. op.) (trial court had the authority to amend the order of commitment to require TCCO to supervise Martinez and to place him in the tiered treatment system); *In re Williams*, No. 09-16-00087-CV, 2016 Tex. App. LEXIS 8708, at *1 (Tex. App.—Beaumont Aug. 11, 2016, orig. proceeding) (mem. op.) (trial court did not abuse its discretion by ordering Williams into the tiered treatment program). The petitioner in *Wilson* also argued that his amended commitment order unlawfully interfered with his rights under the original commitment order to receive outpatient treatment. 2016 Tex. App. LEXIS 10400, at *8. This Court rejected that argument, finding that the trial court had the authority to modify its prior orders and the plaintiff "had no vested rights under the trial court's previous orders." *Id.* at 9. This Court explained that the judgment allowed the agency in charge of the

12

plaintiff's treatment to decide both where he would be required to live and to supervise the program of sex offender treatment that the commitment order required that he receive. *Id*. "[B]y amending the commitment order so that the amended order complied with the changes the Legislature made to the SVP statute in 2015, the trial court did not violate [plaintiff's] constitutional rights." *Id.* at 10; *see also In re Danner*, 502 S.W.3d 838, 839 (Tex. App.—Beaumont 2016, orig. proceeding); *In re Commitment of May*, 500 S.W.3d 515, 524-26 (Tex. App.—Beaumont 2016, pet. denied); *In re Commitment of Cortez*, 405 S.W.3d 929, 935-36 (Tex. App.—Beaumont 2013, no pet.). Poest concedes the version of section 841.082 of the Health and Safety Code that existed before 2015 allowed the trial court to modify the requirements listed in section 841.082(a), which includes "requiring the person to reside where instructed" and "requiring the person's participation in and compliance with the sex offender treatment program[.]" Even though the trial court already had the power to modify Poest's court-ordered sex offender treatment, Poest argues the 2015 amendment to the SVP Act "does not authorize placing Poest, or anyone else into the tiered program, requiring total confinement," and he contends he is entitled to "treatment and supervision under the pre-amendment version of the statute, and in a manner other than in confinement." We disagree.

Subsection 40(b) of S.B. 746 states:

If a civil commitment requirement imposed under Chapter 841, Health and Safety Code, before the effective date of this Act differs

13

from any of the civil commitment requirements listed in Section 841.082, Health and Safety Code, as amended by this Act, the applicable court with jurisdiction over the committed person shall, after notice and hearing, modify the requirement imposed as applicable to conform to that section.

Act of May 21, 2015, 84th Leg., R.S., ch. 845, 2015 Tex. Sess. Law Serv. 2701, 2711. Poest argues this paragraph applies only to section 13 of S.B. 746, which amended section 841.082 of the Health and Safety Code. *See id.* 2015 Tex. Sess. Law Serv. at 2704-05. Poest argues the changes S.B. 746 made to other sections within Chapter 841 of the Health and Safety Code, including the tiered treatment program requirements found in newly-added section 841.0831, are prospective only and cannot be applied to him. His sole support for his proposition is subsection 40(a) of S.B. 746, which provides:

> SECTION 40. (a) Except as provided by Subsection (a-1) of this section, the changes in law made by this Act to Chapter 841, Health and Safety Code, apply to a civil commitment proceeding under that chapter that is initiated on or after the effective date of this Act, regardless of when the applicable petition for civil commitment was filed.

*Id*. 2015 Tex. Sess. Law Serv. at 2711.[1]

---

[1] Subsection (a-1), which provides an exception to Section 40(a), states:

(a-1) The jurisdiction of a district court, the representation of the state by the civil division of the special prosecution unit, and the representation of a respondent by the Office of State Counsel for Offenders or other court-appointed counsel in any civil commitment trial, any review of a petition for release, or any biennial review under Chapter 841, Health and Safety Code, that is pending on the effective

Poest argues section 41 of S.B. 746 applies only to the 2015 amendment to section 841.085 of the Health and Safety Code, subsection 40(b) applies only to the 2015 amendment to section 841.082 of the Health and Safety Code, and subsection 40(a) applies to all remaining sections of the SVP Act that the legislature amended in S.B. 746. Poest misinterprets subsection 40(a), he reads it in isolation, without considering the purpose of S.B. 746, and he ignores the plain language of what section 40 actually says. For example, in sections 1, 3, and 35-38 of S.B. 746, the legislature replaced the Office of Violent Sex Offender Management with the TCCO. *See* 2015 Tex. Sess. Law Serv. at 2701 (amending Health & Safety Code Ann. §§ 841.002(4); 841.007), 2711 (amending Tex. Gov't Code Ann. §§ 420A.001-.004). Under Poest's misguided arguments, the statutes creating the TCCO and giving it the responsibility for administering the state's sex offender treatment program would not apply to anyone who was civilly committed before June 17, 2015. That would be expressly contrary to the statute.

Subsection 40(b) expressly requires the court with jurisdiction over a committed person, after notice and a hearing, to modify any civil commitment requirement imposed under Health and Safety Code Chapter 841 to conform with the changes that S.B. 746 made to any of the civil commitment requirements listed

---

date of this Act remain unaffected by this Act until the conclusion of that proceeding.

in Health and Safety Code section 841.082. *Id*. at 2711. The civil commitment requirements of section 841.082 include requiring the person to reside where instructed by the TCCO, requiring the person's participation in and compliance with the sex offender treatment program provided by TCCO, and requiring the person to submit to the supervision of the TCCO. *See* Tex. Health & Safety Code Ann. § 841.082. We conclude Poest's argument is contrary to our prior precedent, as well as contrary to the express language in the statute.

For the reasons discussed above, we conclude the 2015 amendments to the SVP Act at issue here, including the tiered treatment program, apply to Poest as a matter of law and are not unconstitutional as applied to Poest. Because the trial court did not abuse its discretion in denying the application, we deny Poest's request seeking mandamus relief.

Conclusion

In conclusion, when the trial court denied Poest's application and request for a hearing, the trial court did not rule on the merits of Poest's application seeking a writ of habeas corpus. Accordingly, we lack appellate jurisdiction over Poest's attempted appeal of the trial court's order denying Poest's application and his appeal is dismissed. That said, after considering Poest's brief as a petition for a writ of mandamus, we further conclude that the trial court acted within its discretion and that Poest is not entitled to mandamus relief because we conclude that the 2015

16

amendments to the SVP Act, including the tiered treatment program, apply to Poest as a matter of law. We deny the petition for a writ of mandamus. *See* Tex. R. App. P. 43.2(f), 52.8(a).

APPEAL DISMISSED; PETITION DENIED.

PER CURIAM

Submitted on May 21, 2024
Opinion Delivered June 27, 2024

Before Golemon, C.J., Horton and Johnson, JJ.